FILED

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )     Criminal Case No. 1:13CR 176 |
| | ) |
| PARKER DRILLING COMPANY, | ) |
| | ) |
| Defendant. | ) |

## DEFERRED PROSECUTION AGREEMENT

Defendant Parker Drilling Company (the "Company"), by its undersigned

representatives, pursuant to authority granted by the Company's Board of Directors, and the

United States Department of Justice, Criminal Division, Fraud Section, and the United States

Attorney's Office for the Eastern District of Virginia (collectively, the "Department"), enter into

this deferred prosecution agreement (the "Agreement"). The terms and conditions of this

Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.     The Company acknowledges and agrees that the Department will file in the

United States District Court for the Eastern District of Virginia the attached one-count criminal

Information, charging the Company with knowingly and willfully violating the anti-bribery

provisions of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-1(a).

In so doing, the Company: (a) knowingly waives its right to indictment on this charge, as well as

all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution,

Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and

(b) knowingly waives for purposes of this Agreement and any charges by the United States arising out of the conduct described in the attached Statement of Facts any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of Virginia.

2.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the allegations described in the Information and the facts described in Attachment A are true and accurate.  Should the Department pursue the prosecution that is deferred by this Agreement, the Company agrees that it will neither contest the admissibility of nor contradict the Statement of Facts in any such proceeding, including without limitation any trial, guilty plea, or sentencing proceeding.  Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents.

### Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending three (3) years and seven (7) calendar days from that date (the "Term").  However, the Company agrees that, in the event that the Department determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Department, in its sole discretion, for up to a total additional time period of one year, without prejudice to the Department's right to proceed as provided in Paragraphs 14 through 17 below.  Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting

requirement in Attachment D, for an equivalent period. Conversely, in the event the Department finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Term of the Agreement may be terminated early.

### Relevant Considerations

4.     The Department enters into this Agreement based on the individual facts and circumstances presented by this case and the Company. Among the facts considered were the following: (a) the Company's cooperation, including conducting an extensive internal investigation and collecting, analyzing, and organizing voluminous evidence and information for the Department; (b) the Company has engaged in extensive remediation, including ending its business relationships with officers, employees, or agents primarily responsible for the corrupt payments, enhancing its due diligence protocol for third-party agents and consultants, increasing training and testing requirements, and instituting heightened review of proposals and other transactional documents for all the Company's contracts; (c) the Company has retained a full-time Chief Compliance Officer and Counsel who reports to the Chief Executive Officer and Audit Committee, as well as staff to assist the Chief Compliance Officer and Counsel; (d) the Company has already significantly enhanced and is committed to continue to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement; (e) the Company has implemented a compliance-awareness improvement initiative and program that includes issuance of periodic anti-bribery compliance alerts; (f) the Company has already implemented many of the elements described below in paragraphs 8 and 9 and in Attachment C; and (g) the Company has agreed to continue to cooperate with the Department in any ongoing investigation

of the conduct of the Company and its officers, directors, employees, agents, and consultants relating to violations of the FCPA as provided in Paragraph 5 below.

5.      The Company shall continue to cooperate fully with the Department in any and all matters relating to corrupt payments and any related false books and records and inadequate internal controls, subject to applicable law and regulations.  At the request of the Department, the Company shall also cooperate fully with other domestic or foreign law enforcement authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company, its parent company or its affiliates, or any of its present and former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to corrupt payments.  The Company agrees that its cooperation shall include, but is not limited to, the following:

a.      The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants concerning all matters relating to corrupt payments about which the Company has any knowledge or about which the Department may inquire.  This obligation of truthful disclosure includes the obligation of the Company to provide to the Department, upon request, any document, record or other tangible evidence relating to such corrupt payments about which the Department may inquire of the Company.

b.      Upon request of the Department, with respect to any issue relevant to its investigation of corrupt payments in connection with the operations of the Company and related books and records of the Company, or any of its present or former subsidiaries or affiliates, the Company shall designate knowledgeable employees, agents or attorneys to provide to the

4

Department the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

        c.      With respect to any issue relevant to the Department's investigation of corrupt payments, related false books and records, and inadequate controls in connection with the operations of the Company or any of its present or former subsidiaries or affiliates, the Company shall use its best efforts to make available for interviews or testimony, as requested by the Department, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

        d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Department pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, and the MDBs, of such materials as the Department, in its sole discretion, shall deem appropriate.

### Payment of Monetary Penalty

        6.      The Department and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

a.    The 2012 USSG are applicable to this matter.

b.    <u>Offense Level</u>.  Based upon USSG § 2C1.1, the total offense level is 30, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base Offense Level | 12 |
| (b)(2) | Value of benefit received more than $2,500,000, less than $7,000,000 | +18 |
| **TOTAL** | | 30 |

c.    <u>Base Fine</u>.  Based upon USSG § 8C2.4(a)(1), the base fine is $10,500,000.

d.    <u>Culpability Score</u>.  Based upon USSG § 8C2.5, the culpability score is 7, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(2) | the organization had 1,000 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +4 |
| (g)(2) | the organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| **TOTAL** | | 7 |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $10,500,000 |
| Multipliers | 1.4(min)/2.8(max) |
| Fine Range | $14,700,000 / $29,400,000 |

The Company agrees to pay a monetary penalty in the amount of $11,760,000, an approximately 20 percent reduction off the bottom of the fine range, to the United States Treasury within ten (10) days of the filing of the Information.  The Company and the Department agree that this fine is appropriate given the facts and circumstances of this case, including the Company's cooperation, extensive remediation, commitment to continue to enhance its compliance program, and culpability relative to other companies examined in this investigation.  The $11,760,000 penalty is final and shall not be refunded.  Furthermore, nothing in this Agreement shall be deemed an agreement by the Department that $11,760,000 is the maximum penalty that may be imposed in any future prosecution, and the Department is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Department agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.  The Company acknowledges that no United States tax deduction may be sought in connection with the payment of any part of this $11,760,000 penalty.

### Conditional Release from Liability

7.      Subject to Paragraphs 14 through 17, the Department agrees, except as provided herein, that it will not bring any criminal or civil case against the Company or its subsidiaries related to the conduct described in the attached Statement of Facts or relating to information that the Company disclosed to the Department prior to the date on which this Agreement was signed. However, the Department may use any information related to the conduct described in the attached Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other

proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

      a.    This Paragraph does not provide any protection against prosecution for any future corrupt payments, false books and records, or inadequate controls by the Company.

      b.    In addition, this Paragraph does not provide any protection against prosecution of any present or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of the Company for any violations committed by them.

### Corporate Compliance Program

8.    The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws throughout its operations including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other high-risk activities. Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Department as of the date of signing of this Agreement for which the Company would otherwise be responsible.

9.    In order to address any deficiencies in its internal controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws. If necessary and appropriate, the Company will adopt new or modify existing internal controls, policies, and procedures in order to ensure that the Company maintains: (a) a system of internal accounting controls designed to ensure the making and

keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance code, standards, and procedures designed to detect and deter violations of the FCPA and other applicable anti-corruption laws. The internal controls system and compliance code, standards, and procedures will include, but not be limited to, the minimum elements set forth in Attachment C, which is incorporated by reference into this Agreement.

## Enhanced Compliance Undertaking

10.     The Company represents that it has or will also undertake, at a minimum, the enhanced compliance obligations described in Attachment C, for the duration of this Agreement.

11.     The Company agrees that it will report to the Department annually during the term of the Agreement regarding remediation and implementation of the compliance measures described in Attachment C. These reports will be prepared in accordance with Attachment D.

## Deferred Prosecution

12.     In consideration of: (a) the past and future cooperation of the Company described in Paragraphs 4 and 5 above; (b) the Company's payment of a criminal penalty of $11,760,000; and (c) the Company's implementation and maintenance of remedial measures as described in Paragraphs 8 through 11 above, the Department agrees that any prosecution of the Company for the conduct set forth in the attached Statement of Facts, and for the conduct that the Company or its subsidiaries disclosed to the Department prior to the signing of this Agreement, be and hereby is deferred for the Term of this Agreement.

13.     The Department further agrees that if the Company fully complies with all of its obligations under this Agreement, the Department will not continue the criminal prosecution against the Company described in Paragraph 1 or initiate any prosecution against the Company or its subsidiaries for any conduct that the Company disclosed to the Department before the

signing of this Agreement, and, at the conclusion of the Term, this Agreement shall expire. Within thirty (30) days of the Agreement's expiration, the Department shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1.

## Breach of the Agreement

14.     If, during the Term of this Agreement, the Department determines, in its sole discretion, that the Company has (a) committed any felony under U.S. federal law subsequent to the signing of this Agreement; (b) at any time provided in connection with this Agreement deliberately false, incomplete, or misleading information; (c) failed to cooperate as set forth in Paragraph 5 of this Agreement; (d) failed to implement an enhanced compliance program as set forth in Paragraphs 10 and 11 of this Agreement and Attachment C; or (e) otherwise breached the Agreement, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Department has knowledge, including the charges in the Information described in Paragraph 1, which may be pursued by the Department in the U.S. District Court for the Eastern District of Virginia or any other appropriate venue. Any such prosecution may be premised on information provided by the Company. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

15.     In the event that the Department determines that the Company has breached this Agreement, the Department agrees to provide the Company with written notice of such breach

prior to instituting any prosecution resulting from such breach.  The Company shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the Department in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Department shall consider in determining whether to institute a prosecution.

16.     In the event that the Department determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Department or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Department against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that statements made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed.  The decision whether conduct or statements of any current director or employee, or any person acting on behalf of, or at the direction of, the Company will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Department.

17.     The Company acknowledges that the Department has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment.  The Company further

11

acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

## Sale or Merger of Company

18.     The Company agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

## Public Statements by Company

19.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 14 through 17 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Department. If the Department determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Department shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. The Company shall be permitted to raise defenses and to assert affirmative

12

claims in other proceedings relating to the matters set forth in the Statement of Facts provided

that such defenses and claims do not contradict, in whole or in part, a statement contained in the

Statement of Facts. This Paragraph does not apply to any statement made by any present or

former officer, director, employee, or agent of the Company in the course of any criminal,

regulatory, or civil case initiated against such individual, unless such individual is speaking on

behalf of the Company.

20.     The Company agrees that if it or any of its direct or indirect subsidiaries or

affiliates issues a press release or holds any press conference in connection with this Agreement,

the Company shall first consult the Department to determine (a) whether the text of the release or

proposed statements at the press conference are true and accurate with respect to matters between

the Department and the Company; and (b) whether the Department has no objection to the

release.

21.     The Department agrees, if requested to do so, to bring to the attention of

governmental and other debarment authorities the facts and circumstances relating to the nature

of the conduct underlying this Agreement, including the nature and quality of the Company's

cooperation and remediation. By agreeing to provide this information to debarment authorities,

the Department is not agreeing to advocate on behalf of the Company, but rather is agreeing to

provide facts to be evaluated independently by the debarment authorities.

## Limitations on Binding Effect of Agreement

22.     This Agreement is binding on the Company and the Department but specifically

does not bind any other federal agencies, or any state, local or foreign law enforcement or

regulatory agencies, or any other authorities, although the Department will bring the cooperation

13

of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

**Notice**

23.    Any notice to the Department under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the Deputy Chief – FCPA Unit, Fraud Section, Criminal Division, U.S. Department of Justice, Fourth Floor, 1400 New York Avenue, N.W., Washington, D.C. 20005. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Jon-Al Duplantier, Senior Vice President, Chief Administrative Officer, and General Counsel, Parker Drilling Company, 5 E Greenway Plaza #100, Houston, TX 77046. Notice shall be effective upon actual receipt by the Department or the Company.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**Complete Agreement**

24.     This Agreement sets forth all the terms of the agreement between the Company

and the Department.  No amendments, modifications or additions to this Agreement shall be

valid unless they are in writing and signed by the Department, the attorneys for the Company and

a duly authorized representative of the Company.

**AGREED:**

**FOR PARKER DRILLING COMPANY:**

Date: *April 9, 2013*     By:

JON-AL DUPLANTIER
Senior Vice President, Chief Administrative
Officer, and General Counsel
Parker Drilling Company

Date: *April 10, 2013*     By:

MITCHELL S. ETTINGER
SAUL M. PILCHEN (ret.)
STEPHANIE F. CHERNY
Skadden, Arps, Slate, Meagher & Flom LLP
Counsel for Parker Drilling Company

15

**FOR THE DEPARTMENT OF JUSTICE:**

JEFFREY H. KNOX
Chief, Fraud Section

Date: 4/15/13

BY:

STEPHEN J. SPIEGELHALTER
Trial Attorney, Fraud Section

United States Department of Justice
Criminal Division
1400 New York Avenue, N.W.
Washington, D.C. 20530
Phone:  (202) 307-1423
Fax:     (202) 514-7021
Email:   stephen.spiegelhalter@usdoj.gov

NEIL H. MacBRIDE
UNITED STATES ATTORNEY

Date: 4/15/13

BY:

JASMINE YOON
Assistant United States Attorney

CHARLES F. CONNOLLY
Assistant United States Attorney

U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:  (703) 299-3700
Fax:     (703) 299-3981
E-mail:  Jasmine.Yoon@usdoj.gov
           Charles.Connolly@usdoj.gov

16

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Parker Drilling Company (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Senior Vice President, Chief Administrative Officer, and General Counsel for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: _April 9th_, 2013

PARKER DRILLING COMPANY

By: _____

Jon-Al Duplantier
Senior Vice President, Chief Administrative Officer, and
General Counsel
Parker Drilling Company

## CERTIFICATE OF COUNSEL

I am counsel for Parker Drilling Company (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Senior Vice President, Chief Administrative Officer, and General Counsel of the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: April 10 , 2013

By: _____
Mitchell S. Ettinger
Saul M. Pilchen (ret.)
Stephanie F. Cherny
Skadden, Arps, Slate, Meagher & Flom LLP
Counsel for Parker Drilling Company